Good morning, Your Honors. May it please the Court, my name is Stephen O'Connor and I represent Frances Zamaro-Silvero. She is the appellant in this case. This is a criminal immigration case, a word you may hate or love, but it is the intersection of state criminal law and federal immigration offenses. Here the federal immigration offense is a crime of moral turpitude. That term is not defined by Congress, but the Board has, in published decisions, stated that it has two parts, one, a mens rea, something higher than reckless, and two, behavior, or I guess actus reus, that is inherently base, vile, or depraved. Tell us what the facts are in this record that we judge in terms of whether it was a crime of moral turpitude. Ms. Zamaro has been in the United States since 2000. She's a 57, 58-year-old woman. She had no criminal arrests until a very bad Tuesday in December of 2016 when she was driving in Austin and she committed an accident. She hit a pedestrian and did not remain at the scene. She was indicted for the new version of the statute. This court had a case called Garcia-Maldonado from 2007, which had an older version, but the statutes are not so much different. It only added a third prong where you have to investigate. First, I'll tell you what the statute says now. It says there's four duties. Stop. You must, if you don't stop, return. The third element is you must investigate whether there was an injury. The fourth is you have to remain. When you remain, it goes to the other section of the statute called 550-023, which has three things. You must offer your information. You must give registration of your vehicle. You must render aid. She was convicted of that statute. The board was given a chance in this case to apply that two-pronged attack. Was there intentional? Nobody's disputing. The government responded, don't dispute that there was an intentional act here, but the intent, the minimum conduct was that she could have remained at the scene and done everything else except failed to give her information. Help me here. You mentioned Garcia-Maldonado. In that case, Judge Reveley said that this statute involved a crime of moral torpitude. As I read that case, I know it's 2007 and Mathis comes in 2016, so you're going to help me understand the modified categorical approach and divisible statutes and that sort of thing. As I read what Judge Reveley analyzed in the earlier case, he didn't really parse parts of either 021 or 023. He just said everybody knows if you are in an accident and someone's injured or there was a fatality, I guess, and you leave, it's morally wrong. It's a crime involving moral torpitude. How are we not bound by our prior panel's decision in that case? With all respect to the judge who ruled on that, he did not have the advantage of Mathis. There was a lot of . . . How did Mathis change his underlying . . . I compared the two yesterday, actually looking at Mathis and what it says versus what seems to be the holding of Garcia-Maldonado. What the old thing in 2007 was if some of the crime punished things that are moral torpitude and some that don't, let's look at the conviction record to see what she did. But that has been disallowed by Mathis. But I thought Mathis still allowed you to go basically to the indictment or other documents to determine which part of a divisible statute under which the defendant was charged, right? And of course, the threshold investigation, is it a divisible or indivisible statute? He says it's divisible, but I don't know that he really divides the statute, does he? And I think this Court needs to reverse Garcia-Maldonado because this is an indivisible statute. Even the Board here agreed . . . But how do we reverse it? Our panel can't do that. In light of Mathis, that Mathis has a sea change in what . . . the judges applied what was then the modified gaggle approach, but Judge Justice Kagan clarified that once you have an indivisible statute and the statute is overbroad, which this is . . . I don't think the opponent doesn't dispute this either, that you can be convicted under Texas law of failing to give your information, doing everything else . . . But that was the case under Garcia-Maldonado also. In other words, the statute, they did add it. They added another condition to the statute, but the basics of the statute, 021 and 023, are the same in 07 as today, right? They're the same, but the analysis is different. But Judge Rivley didn't go through and say, well, the minimum under the statute is showing the other person your license. He didn't say that. He said, if you leave the scene of an accident and there's an injury . . . Because he went to the divisible. He said, he did say that it is . . . there are parts of it that are not interpretative. And the Garcia-Maldonado actually . . . that stands for the proposition that just failing to give your information is not moral interpretative. But he said because we have to look at the record to see what the defendant did. But Kagan, Justice Kagan and Mathis says that is no longer permissible. Once you have an indivisible statute where the jury . . . the jury . . . the prosecutor had no need to prove that she did fail to offer information or she failed to give a registration or she rendered aid, he had no need to prove that. All of them would approve a conviction. So there's no resort to the modified categorical approach. And that's where the board in this case whiffed on the issue. They applied Garcia-Maldonado. And they had the advantage of Mathis. They were given a second chance in a motion to reconsider saying, please apply Mathis. Please apply what you are supposed to. And they simply said, no, we believe just like Justice Reveley in 2007 said, anybody who does any part of this crime has been convicted of a moral turpitude. And that is reversible error. And the Sheldon v. State is the State case which says you can be . . . unfortunately it's not a very well-written statute, but unfortunately you can be guilty of any of those and be guilty of the felony offense of stop and render aid. And I think, you know, this Court must wrestle with moral turpitude and crimes of violence all the time. But there's a case called Zerate out of the Eleventh Circuit. I'm not sure if the panel is familiar with it, but it's . . . I'll give the site. It's 26 F. 4th, 1196. And that involved a fraud case. But the panel there was similarly wrestling with are we the arbiters of moral turpitude or is the Board? And in that case, the panel remanded to the Board to address in the first instance, is this criminal statute one that necessarily involves moral turpitude? And that is what Petitioner argues here, that remand is appropriate. You know, in basic terms, she is out of detention. She's a 58-year-old woman. She has six children. They're all adults now. She has a husband who's a citizen and a father who's a permanent resident. If she is able to prove that this crime is overbroad and not moral turpitude, then she will be allowed to apply for cancellation of removal. And that is, of course, showing exceptional extreme hardship to her family, which she's never had the chance to do. As I understand it, in order to be a crime involving moral turpitude, it has to shock the conscience. Isn't that part of the test or all of the test? It has to have—the Board has given varying definitions and courts have played with those. But I think the second prong of intentional conduct and inherently base vile, depraved, or I believe that would also be an alternative way to say shock the conscience. And the Garcia-Maldonado court said that failing to give information to somebody at the scene of a crime is not conduct that shocks the conscience. They even referenced the old state bar discipline case of Tate v. State Bar, which was referenced in the briefs. But in that case, the state court, the highest state court of Texas, said that this is not a crime of moral turpitude. And Judge Dennis, in the dissent in Garcia-Maldonado, basically agreed and said that this state should—the investigation should stop once we see that it's overbroad and that it could that was not morally turpitudinous. I'd like to also point this Court to—I mean, you may be asking what has the Board done on other cases in this? And unfortunately, there's not a blank slate, but it's a very poorly recorded one. There's an unpublished case from 2015 on this very statute. And in that case, the clever defense attorney was able to put in the indictment that it was clearly failed to give the information. And so the Board said, well, in that case, this would be pre-Mathis, before Mathis, it said we better remand because that clearly looks under the modified that she'd be innocent of a moral turpitude crime. But Mathis has changed that. So really, the Board had the opportunity in this case to analyze the case under Mathis and they blew it. Was the indictment—was she indicted under a particular section of 023? No, she was indicted under the conjunctive. 021 and 023. All of the—she did all of these things. And I think that the fact that the Texas state courts have said all of those suffice, all of those 023, whether you fail to get—fail to offer registration or fail— I mean, you've got to do 123 and 4, under 023. Yes. And if you don't do one of them, that's enough. It's a violation. Yes. And that's state court law. So Mathis says that we look at—the first point of Mathis is that, look to the state court definition. What does Texas think is the elements of the offense? And the elements, those are just manner and means—failure to give registration, fail to give registration, and rendering aid—they're all just means of committing the felony offense of failing to stop and render aid. But under 023, under 021, it says you've got to stop, you've got to go back to the accident, you've got to remain at the accident, you've got to render aid if there's an injury, and you've got to comply with 023. Correct. Are we looking at 021 or 023? Well, 021, a person commits an offense if the person does not stop or does not comply with the requirements of this section. So— Right. But are we looking at a violation of 021 or 023? Both. Because point—of point 4—sorry, the fourth prong of 021 says remain at the scene and comply with 550-023. But let me ask it this way. Are we concerned with the divisibility of 021 or 023? I don't think—the way the statute is, is these—021 is indivisible, because you have to do—you can't be convicted of just three or just two. You have to—the prosecutor has to prove the elements of the offense that you did all these things. Is 021 the statute that the BIA determined to be involving a crime involving moral turpitude or 023? They used the combination. They said that—they said the statute's indivisible, so that—and I'll call it a scheme. Let's not—let's say it's a scheme. They said it's indivisible and that because Garcia-Maldonado said a person who does that can only be guilty of failing to render aid, they missed the boat, that they missed the boat. 023 has three different ways of—means. So really— I think Garcia-Maldonado is looking at 021. I mean, that's why I'm asking this, I guess, because what Judge—what I read Judge Reveley to say in the majority opinion there is everybody knows if you're in a serious accident and you leave. That is morally wrong, morally—it's involving moral turpitude. So he's looking at 021. If we look at 021, we really don't get to whether, while showing your driver's license to the other person under 023 is where the moral turpitudinous behavior is, we're looking at whether it's under 021. But Judge Reveley did say in that opinion that there are parts of the statute that violate moral turpitude and parts that don't. So the only way to read that is to—and he even said the failure to stop part is not moral turpitude. So the only way to get to that, the failure to offer information part, is to go to 023, which has the three requirements. One of them being— Not if the act that is turpitudinous is leaving the scene of a serious accident. And that's what he seems to say. I mean, I'm looking at page 290 of his opinion, and he says, because Garcia was charged and convicted of intentionally leaving the scene of a serious accident, it follows that he had knowledge that the accident occurred. Once a driver knows he was involved in an accident, he necessarily knows it is wrong to leave, or at the very least to leave without attempting reasonable assistance. It's reversible, because a person can remain at the scene— It's reversible, but tell me how Mathis overruled that or changed that analysis. We're bound by that panel, right? If there's such a clear error based on Mathis, which requires elements—I think Judge Revis thought, well, maybe the elements are that you—an element is you have to leave the scene. But an element of this offense is remains at the scene, renders aid, but fails to give the information, guilty of a felony. And that's the unfortunate way that the scheme is written, but it does say that under the fourth prong, remain at the scene and comply with the requirements of Section 023, and the state court has already said that those are just means, just manner means. Any one of them will violate it. So rather than—I mean, rather than affirm or follow Garcia-Maldonado, I think the appropriate—both parties agree that remand is the best method. Chain re-principles, we couldn't affirm it on a different reason, and I don't believe—I think I'd open to questions, but Garcia-Maldonado cannot survive after Mathis. All right. You've saved some time for rebuttal. Thank you, Mr. Chief. Thank you, Your Honor. Thank you. Ms. Jaruwan, and I'm probably mispronouncing that, so I hope you'll correct me. No, that was actually correct. Thank you, Your Honor. I know it's a—not an easy name. Good morning, Your Honors. May it please the Court, Rea Jaruwan, on behalf of the U.S. Attorney General. I'm in an unusual position of agreeing with much of what the Petitioner's Counsel said.  I believe some of the confusion that we've had with the petitioner's counsel is that the confusion stems from the Board's reliance on Garcia-Maldonado. I think the confusion stems really from the fact that Garcia-Maldonado attempts to apply the categorical approach, but really applies the modified categorical approach. In essence, Garcia-Maldonado skips right to the conviction documents, and that's not how the categorical approach should work. It should begin with considering the statute as a whole, determining the minimum conduct, determining whether that minimum conduct is morally reprehensible or not. Is leaving the scene of a serious accident the minimum conduct, or is showing the driver's license under O2-3 the minimum conduct? It's the latter, Your Honor. How do you square that with what Judge Raveley's analysis was that I just read to counsel opposite? So Garcia-Maldonado did not consider the entirety of the statute as petitioner's counsel. Well, it's two statutes. One is by reference, so that's the nut of this. Are we talking about a violation of O2-1 or an underlying violation of O2-3? I don't actually think you can divide the two. Although they are listed as two statutes, because of that reference to O2-3, the whole statute has to be considered. Both statutes, I'm sorry, have to be considered because of that reference. Because you violate the statute by different methods, and in order to determine the minimum conduct, you have to consider the entirety of all those methods and determine which of those methods is the minimum conduct. So you can't divorce O2-3 from O2-1 when one of the methods of committing the violation, of committing O2-1, involves O2-3 necessarily. But the minimum conduct that is the violation is leaving the scene of a serious accident. That's what O2-1 says. The minimum conduct is you either, under subsection C, you either fail to stop or you fail to comply with the requirements of this section. So if you do stop, and you stay at the scene, but you don't comply with the requirements of the section, including providing that information — But here she didn't stop. I'm sorry? Here she didn't stop. Well, but that's looking at the facts of the case. Before we even get there, we don't want to skip ahead in the categorical approach. And that's what the Mathis framework really drives home. The categorical approach requires first to start with the entirety of the statute, not the facts, not the circumstances of the arrest, none of that. Unfortunately, you have to look just at the statute. And once you determine whether that minimum conduct involves morally reprehensible or not morally reprehensible conduct, then you look at the statute and determine is it divisible or indivisible. If it's divisible, then you move to the modified categorical. And I think — You briefly said it was divisible. So that's wrong under Mathis? Or, I mean, what are we to do with that? It's unclear to me if Garcia-Maldonado really did the step-by-step analysis to determine divisibility. It suggests from the state Texas case law, such as the Huffman decision that I referenced in my brief, that it seems to be an indivisible statute, 0.21 and 0.23. It would be hard to determine that it is divisible simply because there are several methods of committing this act, but there are not separate offenses or elements. The state decision Huffman says that there are alternative methods of violating the statute. You either stop or — you either fail to stop, fail to return, or you fail to remain and comply with the other requirements. So you cannot separate out this statute. It is one offense. And the concurrence in Huffman also discusses that. The concurrence says that an operator could stop, return to the scene, and yet still commit an offense under 550.021 if, while staying at the scene, the operator refused to reveal the required information. So that would be the minimum conduct here. And so the board — If the statute's divisible, as Judge Raveley said it was, I mean, would the division be in 021C if you don't stop? That's an offense under 021? Or if you don't comply with the requirements of the section, which ropes in 023? I don't believe, based on the state case law, that that particular section makes it a divisible statute. And I'm trying to find the exact quote from the Huffman decision. Wouldn't that be two different violations? I mean, that sort of separates out if you leave the scene versus if you come back to the scene or if you remain at the scene but don't show your license. It's just different methods of violating — Can't you violate 021 if you leave the scene of the accident regardless of whether you go to 023? Right. So one method of violating this offense is if you fail to stop entirely. You never return. It's not a separate offense. That's the same offense committed a different way. Correct. Exactly. And so all the state case law — Huffman, St. Clair, the cases that I reference in my And this offense is committed by several different methods. Any one of those methods can trigger a conviction under this offense. And so the only Fifth Circuit decision I could find was the unpublished Orozco decision from 2010, which interpreted Garcia-Maldonado as holding that the statute was not categorically a CIMT because the statute could be violated by the failure to share information. So that suggests that that is one method of violating the offense. That is the minimum conduct. But it may not be a morally turpitudinous conduct. And unfortunately, we don't have the board's answer on that. That's why the government was also asking for remand. The board does not provide us with its interpretation of what is considered moral turpitude. Does this minimum conduct amount to moral turpitude? We have the board's answer as to a totally different definition of minimum conduct based on a misapprehension of the elements. And as a result, or the means of this statute. So as a result, we don't have a final answer from the board as to whether this failure to share information is morally turpitudinous. We could decide that and then send it to the board for final resolution, or we could leave it up to the board to decide, is that right? Certainly, Congress has left it to the federal courts to interpret the application of the CIMT provision to state and federal laws. But Congress did leave it to the board to interpret the term moral turpitude. And so it's within the board's expertise and authority to provide the answer whether a particular conduct is moral turpitude or is not moral turpitude. And that's really the main, that's the reason we are asking for a remand, is we are constrained right now by the board's analysis, which is lacking. It does not consider the entirety of this statute, or both statutes, however you want to look at it. It does not provide the minimum conduct that includes the entirety of these statutes. And so as a result, we just simply don't have enough analysis and we need the board as the So, again, the issues with the board's decision are essentially, first, that the board misapprehended the elements, the board provided the wrong minimum conduct, and so we don't have an answer as to whether the board finds that this minimum conduct is morally turpitudinous, which is dispositive of this case. That defines whether or not this petitioner is eligible for cancellation of removal or not. And the board did assume indivisibility in this matter, which is helpful because the case law suggests that it is indivisible. But if any other analysis were to be applied, such as the modified categorical approach, which I don't think applies here, but we, again, would need the board to provide that In regards to the other issues in the brief, Your Honors, whether or not the NTA is defective and the temporary board member issue, I refer back to the answering brief as well as the letter we sent to this court to answer those questions. But if Your Honors don't have any other questions for me, I'm happy to yield my time to counsel. I'm curious, Sarah, one thing about that reappointment letter for Judge Pepper. Yes. That became a distraction since it wasn't in the record. Why didn't you file that letter when the issue first came up? Your Honor, I understand the question, Your Honor. The issue first came up in the petitioner's opening brief. And at that point, the government should have addressed it. I think we were, counsel and I were focused on the remand issue for the crimmigration concerns, and we were drafting our remand briefs just based on those crimmigration issues. And then in the motion to reconsider, the board seems to have answered the question by citing to the regulation. Counsel did not bring it up into the supplemental brief. I did not bring it up as a result, or I argued that there was a waiver. But had I addressed it in the first answering brief, then that would have been the proper time to raise that issue. So I apologize, and I hope the letter answered Your Honor's questions on that. Thank you. Mr. O'Connor for the vote. Thank you, Justice Clement, for that question. Immigration attorneys sometimes tend to throw the kitchen sink at a case because we have exhaustion. And I did not know if she had been appointed or not. I looked on the web and it said, you know, appointment expired in 2020. Apparently there was a letter. So I hope the court indulges us that we sometimes throw in vagueness, we throw everything, because we don't know what's going to stick. And this is a client's life is on the line, her ability to stay in the United States. I agree with everything counsel said. I just want to point the court to two post-Mathis decisions from two separate circuit courts. That would be the Lot 2 case from the Ninth Circuit, and again, they also found the same indivisible statute where conduct could be done with just failing to offer information, and that was therefore a categorically not a CIMT. The other cases, the Fourth Circuit, Nunez-Vazquez, which similarly on a Virginia statute said that the defendant, they don't look to the record, what she did, they look at the elements of the offense. And the elements of the offense did incorporate parts that were just manner and means. Offering information was just a manner and means, and failing to render aid was a manner and means. So they found that that Virginia statute was not a moral turpitude. So do you agree with opposing counsel that we can't make the decision as to whether it's moral turpituidness or whatever, that it has to go back to the board? You're asking for a remand also. I think, and I'll follow, you know, Judge Joe Flatt, I believe, in the Eleventh Circuit, he was the concurrence in that case I referenced, the Eleventh Circuit case, where, but he said, you know, the contours of moral turpitude are hazy at best. This court had no choice in Garcia-Maldonado, there was no Mathis, Judge Kagan, definition of how to apply the categorical approach. So I believe in this case, the board does have Mathis, it should have applied it, and I think remand would be the best. To the board. To the board, yeah. I'm open to any other questions if they're from the panel. All right. Thank you, Mr. O'Connor. Thank you, Your Honor. Case for submission. Thank you. Court adjourned.